In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1166

CHIC ZOCH,

*Plaintiff-Appellant*,

*v.*

ANDREW M. SAUL,
Commissioner of Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 18-cv-2142 — **Colin S. Bruce**, *Judge*.

ARGUED NOVEMBER 17, 2020 — DECIDED NOVEMBER 24, 2020

Before EASTERBROOK, HAMILTON, and ST. EVE, *Circuit Judges*.

PER CURIAM. Alleging debilitating pain in her back, legs, and hands, Chic Zoch seeks disability insurance benefits. An administrative law judge ruled that, based on the opinions of three of her four treating physicians, a consulting physician, and the objective medical evidence, she could perform sedentary work. The ALJ thus denied her application, a ruling

upheld by the district court. On appeal, Zoch argues that the ALJ improperly discounted her assertions, and an opinion by a physician who relied on those assertions, that pain disabled her from performing sedentary work. Substantial evidence supports the ALJ's decision, so we affirm.

## Background

Zoch applied for disability insurance benefits under Title II of the Social Security program, principally alleging that back, leg, and hand pain disabled her from work. Her alleged disability began in September 2011; the last date on which she was insured was December 31, 2013. *See* 20 C.F.R. § 404.130; 42 U.S.C. §§ 413, 423.

Zoch visited four doctors, the first of whom, Scott Paluska, saw her several times in 2011 and 2012 for Zoch's complaints of back pain. He diagnosed her in October 2011 with a herniated cervical disc, low back pain, and disc degeneration and slippage. Zoch's condition remained stable into the next year. Her straight-leg raising tests were normal, he observed no tenderness in her lower-back joint and sciatic nerve, she could stretch her fingers painlessly, and her wrist X-ray showed no degenerative changes, fractures, or dislocations. She, however, had tenderness in her spine and gluteal muscles, and during one visit she walked abnormally and could not put full weight on her feet. For treatment, he recommended conservative physical therapy, weight loss, home exercise, pain medication, and steroid injections. In addition to these treatment notes, Dr. Paluska wrote on Zoch's disability application that she complained of pain when sitting for long periods and required frequent position changes. He checked a box asserting that she could not perform sedentary work. This conclusion, he wrote, was reflected in Zoch's X-rays and MRIs.

The next two doctors saw Zoch's medical issues differently. The second doctor, whom Zoch visited five times in 2012, was Isaac Lee. Dr. Lee noted that Zoch had a full range of motion, a normal gait, and appropriate strength in her extremities. He worked with Zoch to identify medicine to alleviate her reported depression. The third doctor, James Harms, saw Zoch the following year on referral from Dr. Paluska to consider the usefulness of back surgery. Dr. Harms, who specializes in neuroscience and spine health, concluded that surgery was not needed for Zoch's reported pain. Her MRI, he said, revealed degenerative disc disease and arthritis, which could cause soreness and stiffness if Zoch did not move for an extended period. But he did not find any gross deformities in her back or pressure on her nerves. He also observed that she could bend to touch her fingertips to her knees and that her straight-leg raising was manageable. For treatment, Dr. Harms advised Zoch to lose weight and use heat, ice, therapy, medication, a back brace, and muscle relaxers.

Reaching similar conclusions was the fourth treating doctor, Shabeera Rauther, whom Zoch saw the next month when she complained of "constant, aching" pain "all over her body" and numbness in her hands and feet. Zoch admitted that she was able to do activities of daily living "okay," and Dr. Rauther observed that she walked normally. Zoch's lumbar MRI results, Dr. Rauther concluded, were "unremarkable without any major stenosis [contraction of spine] problems," and she "did not see anything striking…to offer any intervention." A physical exam showed fibromyalgia points and tenderness in her spine, lower-back joints, and hip, but Dr. Rauther observed a normal straight-leg raising test, full strength in Zoch's upper and lower extremities, and no spinal misalignment. Dr. Rauther diagnosed her with degenerative disc

disease and deterioration, arthritis from cartilage loss, and questionable fibromyalgia. She agreed with Dr. Harms that surgery would not help, though she also noted that she did not review or have access to notes by Zoch's other treating physicians.

Throughout this period, Zoch received treatment for her pain. She received steroid injections in her wrists and feet. She also took medications, which she said "took the edge off" but, she testified, did not offer complete relief. Zoch once reported to Dr. Lee that her pain was less intense while taking medicine for depression.

After Zoch applied for benefits, other physicians offered opinions. First, a consulting physician for the Social Security Administration, Nathaniel Robinson, reviewed her medical records. Dr. Robinson found that her subjective complaints were not substantiated by the objective medical evidence and concluded that she was not disabled. Zoch had no restrictions on her activities of daily living, he said, and she could sit or stand for six hours in an eight-hour workday with no manipulative limitations. He therefore opined that she had the residual functioning capacity to perform light work as a purchasing officer, one of her prior jobs. After Zoch's date last insured and before the hearing on her claim, Zoch visited three other treating physicians—all of whom opined that Zoch, at that time, could not sit or stand for extended periods.

Zoch testified at the hearing before an administrative law judge about her pain. She asserted that she could not sit or stand for more than 15 minutes at a time or work on a computer because of hand and wrist pain. She said that she sometimes wore a back brace and she walked with a cane "more than half the time." Zoch's mother lived with her and helped

with house cleaning, laundry, grocery shopping, dressing (because it was too painful to raise her arms and bend over), and food preparation, as she spent most of her time lying in bed or a recliner. This testimony differed from Zoch's application. There, Zoch reported that she lived alone, independently managed personal hygiene with minimal difficulty, prepared simple meals like sandwiches and salads, and took care of her pet by letting it outside and putting food in its bowl. She did the laundry about once per week (but took several breaks), washed the dishes daily, and did some grocery shopping by herself. She wrote that she did this with severe pain, and she could not sit or stand for extended periods. She added that it took days to complete the application because she was "hurting so bad from writing [it]."

A vocational expert also testified at the hearing. The ALJ proposed to him a person who could sit for six hours in an eight-hour workday and was able to handle items frequently. The expert opined that the person could work as a purchasing agent at a sedentary level (as Zoch had performed it). But if Zoch was unable to sit for six hours, she could not perform this past work. Moreover, the expert said, a person limited to sedentary work, only occasional handling, and unskilled jobs would not find work in the national economy.

Zoch did not receive benefits. The ALJ applied the standard five-step analysis, *see* 20 C.F.R. § 416.920(a)(4). He ruled that Zoch could perform sedentary work, *see* 20 C.F.R. § 404.1567(a), involving frequent hand use. He disregarded the doctors who treated Zoch after her date last insured, but gave significant weight to Robinson (the consulting doctor) and Rauther, Harms, and Lee (three treating doctors) because their opinions were consistent with the objective medical

evidence describing her mobility and the rest of the record. Because Dr. Paluska's opinion was not consistent with that evidence, the ALJ explained, so he gave it little weight. Noting that the objective evidence was "not what one would expect for an individual with debilitating chronic back, hips, legs and hand pain," the ALJ concluded that Zoch could perform her past work as a purchasing agent. The Appeals Council denied review of the ruling, making it the Commissioner's final decision. The district court ruled that the ALJ's assessment was supported by substantial evidence and upheld the decision.

## Analysis

On appeal, Zoch raises two arguments. First, the ALJ minimized her symptoms and inability to handle daily activities by wrongly discrediting her testimony. Second, by inadequately explaining why he discounted Dr. Paluska's opinion, the ALJ wrongly concluded that she could perform sedentary work. To resolve these arguments, we ask whether the ALJ's decision is supported by substantial evidence—evidence that "a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

I.  Zoch's Symptoms and Performance of Daily Activities

In arguing that the ALJ mis-assessed her symptoms and her ability to perform daily activities, Zoch complains that the ALJ improperly relied on her application, and in any case, that application was consistent with her testimony, which the ALJ, she says, wrongly discounted. But the ALJ's credibility decision is sound.

We do not decide questions of credibility, deferring instead to the ALJ's conclusions unless "patently wrong." *See*

*Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). To determine the credibility of allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record. 20 C.F.R. § 404.1529(c). A claimant's assertions of pain, taken alone, are not conclusive of a disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ permissibly discounted Zoch's testimony of incapacitating pain because it conflicted with the objective medical evidence and most of the record. First, as the ALJ emphasized, the following objective test results were normal: lumbar MRI, wrist x-rays, range of motion, straight-leg raising, strength in extremities, and pressure on her nerves. Second, Zoch's testimony that she usually walked with a cane conflicted with the doctors' reports that, at all but one of her appointments, she walked normally. Third, Zoch's testimony that she could not raise her arms or bend over to dress herself conflicted with Dr. Harms's observation that Zoch could comfortably bend over to touch her fingertips to her knees. Finally, Zoch's hearing testimony that she could not perform the usual activities of daily living, the ALJ reasoned, was inconsistent with her own prior assertions. She wrote in her application that, despite pain, she washed dishes, prepared simple meals, took care of her pet, drove to doctor appointments, and grocery shopped about once per week. She also reported to Dr. Rauther in December 2013 that she could perform activities of daily living "okay." Considering these inconsistencies, the objective medical evidence, and all four doctors' opinions, the ALJ reasonably discounted Zoch's assertion of disabling pain. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013).

II.    Zoch's Ability to Perform Sedentary Work

A.    Ability to Sit for Six Hours per Eight-Hour Workday

Zoch next argues that, despite her and Dr. Paluska's contrary views, the ALJ improperly concluded that she could perform sedentary work (as a purchasing agent) by sitting for six hours in an eight-hour workday. She relies on Social Security Ruling 96-8p, which promises that ALJs will use a "narrative discussion" to describe how the evidence supports their conclusions. *See* SSR 96-8p, 61 Fed. Reg. 34474, 34478 (1996). But the ALJ met this standard. He considered Zoch's testimony that, because of her chronic back, leg, and hand pain, she could not sit for more than 15 minutes. The ALJ then explained that he rejected this testimony because it was contradicted by Zoch's application and by the objective medical evidence, which showed no chronic issues in her musculoskeletal system. Even more, the ALJ added, neither the agency consultant nor any treating physician during the relevant period, except Dr. Paluska (to whom we will return), opined that Zoch could not handle sedentary work. Finally, even if reasonable minds could differ on the ALJ's rejection of Zoch's testimony, we will not reweigh evidence or substitute our judgment for the ALJ's. *See L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

Regarding Dr. Paluska, Zoch maintains that the ALJ did not adequately explain why he gave little weight to this doctor's opinion, given that he was a treating physician. An ALJ should generally give controlling weight to a treating physician's opinion if it is supported by medical findings and consistent with the record, *see* 20 C.F.R. § 404.1527(c)(2), but otherwise the ALJ may discount it.

The ALJ reasonably rejected Dr. Paluska's opinion for three reasons. First, it conflicted with the objective medical evidence. *See* 20 C.F.R. § 404.1527(c)(2). Dr. Paluska's findings, the ALJ noted, were based, in part, on Zoch's MRI, but Dr. Rauther, another treating physician, reported that Zoch's MRI results were "quite unremarkable without any major stenosis problems." And Zoch's three other treating physicians, the ALJ explained, observed that she maintained normal strength in her upper extremities, had no pressure on her nerves, was not a surgical candidate, and walked normally, without assistance. Second, the ALJ reasonably discounted Dr. Paluska's opinion because it conflicted with the consulting doctor's report, *see Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008), which opined that, based on the objective medical evidence, Zoch could sit, stand, or walk for six hours in a workday. Third, the ALJ noted that Dr. Paluska's opinion relied on Zoch's subjective complaints, *see Ketelboeter*, 550 F.3d at 625, which the ALJ reasonably rejected as not credible. Thus, the ALJ's decision to give Dr. Paluska's opinion little weight is sound. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013).

Zoch raises two more arguments that are unavailing. First, she argues that the ALJ did not adopt an opinion by any treating source. But the ALJ gave significant weight to three of Zoch's treating physicians (Dr. Harms, Dr. Lee, and Dr. Rauther). Second, she contends that the ALJ improperly rejected the opinions by three other physicians who treated Zoch after her date last insured. But the ALJ explained that he rejected these opinions because their treatment and diagnoses fell outside of the relevant disability period. We typically expect an ALJ to consider an opinion by a doctor who treated the claimant after the relevant period if it offers a retrospective diagnosis that is corroborated by evidence produced during the

relevant period. *See Liskowitz v. Astrue*, 559 F.3d 736, 742 (7th Cir. 2009). But the physicians who treated Zoch after 2013 offered only current diagnoses and work limitations, so the ALJ's rejection was not flawed.

### B.  Zoch's Ability to Use Her Hands Frequently

Lastly, Zoch argues unpersuasively that the ALJ improperly concluded that Zoch could use her hands frequently (not occasionally) at work. The record contains "scant objective evidence" supporting Zoch's self-reported symptoms of hand cramping and wrist pain that might prevent frequent hand use. *See Ketelboeter*, 550 F.3d at 625. Her wrists were treated with steroid injections, which reportedly managed her pain. Moreover, Dr. Robinson found no manipulative limitations, and Dr. Paluska observed that her wrist X-ray showed no degenerative changes, fractures, or dislocations and that stretching her fingers was not painful. Thus, the record lacked evidence of handling limitations, except for Zoch's testimony, which the ALJ reasonably found unreliable.

AFFIRMED