**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 12, 2021[*]
Decided March 15, 2021

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-2325

| | |
|---|---|
| WINNIELEE J. FANTA, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 19-2061 |
| ANDREW M. SAUL, <br> *Defendant-Appellee.* | Eric I. Long, <br> *Magistrate Judge.* |

**O R D E R**

Winnielee Fanta challenges the denial of her application for supplemental security income and disability insurance benefits based on her anxiety, depression, severe hearing loss, and other impairments. An administrative law judge found Fanta not disabled based on her ability to perform work with certain non-exertional

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

limitations. The district court upheld the decision. Because substantial evidence supports the ALJ's decision, we affirm.

Fanta, now 48 years old, applied for disability benefits, alleging a host of ailments—major depressive disorder, anxiety, a learning disability, attention deficit disorder, hearing impairment, and obesity. She specified an onset date of January 2013, when she last worked as a babysitter.

Throughout her life, Fanta has had a severe hearing impairment. She attended special education classes because she struggled to understand what her teachers were saying. When she was 21, Fanta got her first hearing aids, which helped only to a point. She also testified that hearing problems affected her performance at some of her past jobs. When she worked at a McDonald's, for example, she sometimes did not hear customers come in and frequently had to ask for instructions to be repeated.

As for Fanta's mental health impairments, Dr. Elbert Lee, a psychiatrist, diagnosed her in 2012 with major depressive disorder. Since then, she has consistently been treated for anxiety and depression with therapy and various medications. From 2013 to 2014, Fanta reported to Dr. Lee that she was moderately depressed and stressed from all of her competing responsibilities—she was attending community college, interning at the Salvation Army, and caring for her two children. At Dr. Lee's direction, Fanta tried a few different psychiatric medications until she settled on a treatment plan that reduced her depression. In late 2014, she earned an associate's degree in social work, but she could not find a job as a social worker.

In early March 2015, Fanta's health worsened when she fled an emotionally abusive relationship and moved with her two kids into a shelter. Her depression intensified, and she began binge-eating and gaining weight. Dr. Lee referred her to a therapist, who diagnosed her with severe major depressive disorder. Over the next several months, Dr. Lee frequently changed her medication to treat her new and more-severe symptoms. By late 2016 and 2017, Fanta's condition stabilized. She stayed on the same medication and she reported to Dr. Lee that her depression was mild. But because of her precarious mental health, Dr. Lee told her that she should work from home, a recommendation that he repeated several times in 2016 and 2017.

In December 2017, Fanta testified at a hearing before an ALJ. She said that she isolated herself because of anxiety and depression, and she spent most of her time at home. She also testified that she had a lifelong hearing impairment and could not reliably hear the TV without closed captions or hear people without reading their lips.

At the hearing, she participated without an interpreter, but the transcript shows that she frequently misheard the ALJ, who often had to repeat her questions to Fanta.

A vocational expert also testified about the jobs that would be available to someone with Fanta's functional limitations. The ALJ asked the expert to consider limitations for a hypothetical individual with Fanta's qualifications who could perform routine tasks but needed to work in a low-stress environment with limited interactions with her boss or coworkers, no interactions with the public, and at most a moderate noise level. The expert opined that such a person would not be able to perform Fanta's past work as a babysitter, but could work as a hotel housekeeper, small parts assembler, or janitor.

The ALJ concluded that Fanta was not disabled. Applying the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that (Step 1) Fanta had not engaged in substantial gainful activity during the relevant time period; (Step 2) her bilateral sensorineural hearing loss, obesity, depression, anxiety, and personality disorder were severe impairments; (Step 3) none of those impairments equaled a listed impairment; (Step 4) she retained the residual functional capacity to perform work at any exertional level, subject to the restrictions described to the vocational expert; and (Step 5) she could not perform her past relevant work as a babysitter, but there were a significant number of jobs in the national economy that she would be capable of performing. The Appeals Council denied Fanta's request for review.

Fanta sought review in the district court, which upheld the ALJ's determination.

We review an ALJ's decision on disability benefits under a substantial-evidence standard. *See* 42 U.S.C. § 405(g), *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Substantial evidence is not a high threshold; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted). If reasonable minds could differ, we will defer to the ALJ's judgment and weighing of the evidence. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

Fanta first argues that the ALJ "played doctor" by basing the residual functional capacity assessment on her own interpretation of medical evidence rather than on the doctors' assessments. She contends that the ALJ should have adopted Dr. Lee's recommendation that she not work outside her home because of her recurring social anxiety and depression—a recommendation that, she says, the ALJ discounted based on

a misreading of the evidence. In Fanta's view, the ALJ focused only on her performance at school and work up to 2015, when her condition deteriorated, whereas Dr. Lee made this recommendation in October 2016 and repeated it to her over the next half year, after her depression worsened. Fanta contends that Dr. Lee's opinion is bolstered by notes from her therapist and a determination by the Illinois Department of Human Services that she had a medical barrier to working.

This argument is meritless. An ALJ has "final responsibility" for determining a claimant's residual functional capacity and need not adopt any one doctor's opinion. *See* 20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The ALJ here provided sufficient reason for discounting Dr. Lee's recommendation. As the ALJ explained, by late 2016 Dr. Lee's own records reflect that Fanta's depression and anxiety were well-controlled by medication. Similarly, Fanta's therapist's notes from 2016 through 2017 show a quick improvement and increase in activity after the phase in 2015 when she experienced social isolation and worsening symptoms. In fact, several times between 2015 and 2017, Fanta told Dr. Lee and other doctors that she was doing well overall. The ALJ therefore had ample evidence for her conclusions that Fanta's downturn in 2015 was temporary, and that she was capable of working outside her house.

Fanta also points to several purported mistakes in the ALJ's medical analysis. The ALJ, she says, misstated the nature of her treatment (saying that Fanta's major depressive disorder was treated primarily with medication from 2012 to 2015, when it in fact was treated with both therapy and medication); the ALJ wrongly suggests that Fanta's condition would be disabling only if she had psychosis; the ALJ wrongly assumed that she could leave her prescribed emotional support dog to go to work; and the ALJ opined without basis on the condition of her mental health by suggesting that Fanta's normal gait was evidence of her mental well-being.

To the extent the ALJ did misspeak, any error was harmless. When reviewing an ALJ's opinion, "we give the opinion a commonsensical reading rather that nitpicking at it." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (internal quotation omitted). The ALJ may have mentioned psychosis and Fanta's gait in the same passages where she addressed the severity of Fanta's mental health impairments, but she did not say that psychosis or an abnormal gait are necessary to finding a disability. As for the ALJ's implication that Fanta was not in therapy between 2012 and 2015, it was of no consequence because the ALJ did not rely on it in assessing Fanta's capacity to work. And the ALJ did acknowledge the therapy-dog prescription; she inferred that Fanta

would not need to be with the dog during work hours, and Fanta points us to no evidence in the record that says otherwise.

Next, with regard to her hearing loss, Fanta argues that the ALJ minimized the extent of her impairment by concluding that she could hear normally with her hearing aids. Fanta notes frequent instances at her hearing, as corroborated in the hearing transcript, when she did not hear the ALJ's questions and had to ask the ALJ to repeat them. But based on Fanta's hearing difficulties, the ALJ did incorporate into the residual functional capacity assessment that she had certain noise restrictions—a stricter limitation than suggested by any physician's report in the record. Fanta does not point to any objective evidence or medical opinions in the record that support stricter limitations. She also does not say what stricter limitations she requires. Indeed, "[i]t is unclear what kinds of work restrictions might address [Fanta's] limitations ... because [s]he hypothesizes none." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Finally, Fanta argues that the ALJ wrongly discounted her subjective symptoms as "not entirely consistent" with the evidence, a formulation related to one ("not entirely credible") that we have called "meaningless boilerplate." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). She says the ALJ should have given more weight to her testimony that she needs to isolate herself because of her depression and anxiety to a greater extent than any job would allow.

But we have also said, "[t]he use of boilerplate is innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). The ALJ explained that Fanta's reported symptoms conflicted with contrary statements she made to her doctors—statements to Dr. Lee in 2013 through 2014 and 2016 through 2017 that her depression was mild; to a general practitioner in 2015 that she was "mostly fine"; and to her therapist in 2015 and 2016 that, after a brief period of severe symptoms and increased isolation, she had resumed going out and increased her activity. And the ALJ reasonably inferred from Fanta's academic success and job applications that she was able to work. Finally, the ALJ found that her reported symptoms were incompatible with her current activities: raising her children, managing her household, and regularly running errands. These were sufficient reasons to reject Fanta's testimony.

AFFIRMED