NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 18, 2021
Decided June 11, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-3429

| | |
|---|---|
| LANCE MAURICE ANDERS, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:20-cv-226 |
| ANDREW M. SAUL, Commissioner of Social Security, <br> *Defendant-Appellee*. | Mark A. Beatty, <br> *Magistrate Judge*. |

**O R D E R**

Lance Anders applied for Social Security disability benefits based on two severe impairments: lymphedema in his legs and obesity. An administrative law judge concluded that Anders was not disabled because he could perform light work with certain restrictions. The district court upheld that determination. On appeal Anders maintains that the ALJ erred by failing to adequately evaluate the medical record, improperly weighing the medical opinion evidence, and disregarding Anders's testimony that the leg swelling required him to elevate his legs for multiple hours every day. Because the ALJ's decision is supported by substantial evidence, we affirm.

**I**

A

Anders worked as an animal lab technician until being diagnosed in 2015 with prostate cancer. After a cancer-related surgery in June 2015, he developed lymphedema—persistent swelling due to lymphatic fluid—in both legs. Anders first reported swelling in his legs to his primary care physician, Dr. Tracy Norfleet, in August 2015. Dr. Norfleet noted "mild noticeable swelling of right lower leg," but a vein imaging test revealed no evidence of deep vein thrombosis—one possible cause of the swelling. During a subsequent visit, Dr. Norfleet advised that the edema and related swelling would likely be a lifelong condition and observed that Anders could not return to his job as a lab technician because that work required standing for hours.

Over the next few years, Anders regularly saw Dr. Norfleet, her physician assistant (Suzanne Million), and a vascular surgeon (Dr. Mohamed Zayed) to treat his edema. These doctors and PA Million generally described Anders's edema as "mild," "trace," or grade 1 or 2 (on a scale from 0 to 4 in severity). On only one occasion in March 2016, when Anders saw Dr. Norfleet following a fainting incident, did PA Million document grade 4 edema in Anders's right thigh. The doctors also found that Anders had full muscle strength in his legs and saw no evidence of deep vein thrombosis.

As part of Anders's management of his swelling, his doctors and PA Million prescribed physical therapy and recommended use of compression stockings and a compression leg pump. Over time Anders described worsening symptoms, including pain and swelling in both legs that made it difficult to stand or walk for prolonged periods. He reported that even while wearing compression stockings, his legs would swell after only ten minutes, and he was unable to stand for more than thirty minutes. But Anders also indicated that the compression stockings, daily compression pump treatment, and leg elevation often helped to alleviate his swelling.

B

In May 2016 Anders applied for Social Security disability benefits. An ALJ held a hearing in August 2018. Anders testified at the hearing and explained that he cannot stand or sit for any extended period without his swelling becoming too painful, he wears compression stockings during the day, and he spends two hours each morning and evening using a compression pump to reduce the swelling. Most relevant to this

appeal is Anders's testimony that he elevates his legs at slightly higher than chair level for two or three hours during the day.

A vocational expert also testified at the hearing. The VE stated that an individual who can sit for six hours in the course of a standard eight-hour workday could perform sedentary work in certain jobs (specifically, as an order clerk, a charge clerk, or a weight tester). But the VE added that there would be no jobs available if that same individual had to elevate his legs to waist level for two hours during the workday.

The ALJ further considered the medical opinions from PA Million and two agency doctors. In a written questionnaire, PA Million opined that, given Anders's chronic right leg lymphedema, he could sit, stand, or walk for two to four hours per day. She also wrote that Anders's lymphedema required him to elevate his legs above his waist for two to four hours during an eight-hour workday, and that his lymphedema would cause him to likely miss more than four days per month of work.

As for the medical opinions of the agency doctors, both Dr. Julio Pardo and Dr. Vidya Madala reviewed Anders's medical records and reported on his residual functional capacity or RFC. Neither doctor physically examined Anders. In Dr. Pardo's view, Anders could stand or walk for two hours during a workday, and he made no mention of any leg elevation needs. Dr. Madala reached the same conclusions and offered the same opinions.

Applying the agency's familiar five-step analysis, the ALJ determined Anders was not disabled. See 20 C.F.R. § 404.1520(a). The analysis began with the ALJ finding that Anders suffered from two severe impairments—obesity and lymphedema. But from there the ALJ found that Anders still had the RFC to perform light work with some limitations—none of which included leg elevation needs. In reviewing the medical opinion evidence, the ALJ assigned little weight to PA Million's opinion but great weight to the opinions of the agency physicians, Dr. Pardo and Dr. Madala. The ALJ also acknowledged Anders's testimony that he had to elevate his legs for two to three hours daily, but found no evidence that leg elevation was medically necessary, in part because none of his treatment providers recommended leg elevation, let alone for two to three hours per day. In the end, the ALJ concluded Anders had a serious medical condition but did not qualify for disability benefits because, based on the VE's conclusion that the ALJ adopted, Anders could work in the specified light-duty jobs.

The district court affirmed the denial of benefits, and Anders now appeals.

## II

We will affirm a denial of disability benefits if the ALJ supported his conclusion with substantial evidence. See 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Substantial evidence is not a high threshold: it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### A

"In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (cleaned up). An ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). In Anders's view, the ALJ failed to build the requisite logical bridge between the medical evidence concerning his leg elevation needs and the RFC determination, which omitted any leg elevation restrictions.

We see the evidence otherwise. The ALJ adequately considered the totality of the medical evidence in formulating the RFC. The ALJ summarized Anders's complaints from his initial visits with Dr. Norfleet and Dr. Zayed and described how Anders continued to complain of edema that worsened during the day with prolonged standing. The ALJ also considered the medical examination notes spanning from August 2015 through February 2018 that revealed mild edema, normal muscle strength, and conservative treatment with physical therapy, compression socks, a leg compression pump, and Tylenol. This is not a case where the ALJ missed or failed to account for any medical issue. And, importantly, the ALJ observed that nothing in the record indicated that a treatment provider ever recommended that Anders elevate his legs at all. The ALJ adequately considered the medical evidence.

### B

Anders next challenges the ALJ's decision to assign little weight to PA Million's opinion but great weight to the opinions of the agency doctors. Here, too, we will affirm the ALJ's assignment of weight to various medical opinions if it is supported by substantial evidence. See *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). In doing so, it is

not our place to "reweigh the evidence or substitute our judgment for that of the ALJ's." See *Pepper v. Colvin*, 712 F.3d 351, 632 (7th Cir. 2013).

The ALJ gave adequate reasons for affording little weight to PA Million's opinion. For starters, under the regulations governing Anders's claim, a physician assistant is not an "acceptable medical source," so PA Million's opinion is not entitled to consideration as a "medical opinion" or as a "treating source" opinion. See 20 C.F.R. §§ 404.1502(a)(8), 404.1527(a)(1)–(2). Opinions from medical sources like PAs, however, are still considered using a series of prescribed factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency with the record as a whole; (5) specialization; and (6) other relevant factors. See *id.* § 404.1527(c), (f)(1). Anders does not argue that the ALJ failed to consider the relevant regulatory factors but instead disputes two of the reasons given for discounting PA Million's opinion—specifically, that it was unclear how frequently or how extensively PA Million treated Anders, and that the ALJ's opinion lacked support in the record as a whole.

On the first point, the medical record does not specify what kind of treatment PA Million provided or whether or how often she examined Anders. Only three medical notes (two from September 2015 and one from December 2015) list PA Million as "today's provider." Seeing no evidence that PA Million treated Anders for his lymphedema at all in 2016 or 2017, the ALJ did not err in concluding that the record lacked clarity on the extent and frequency of PA Million's treatments of Anders and discounting her opinion on that basis.

On the second point, Anders argues that the ALJ should have given more weight to PA Million's opinion because it was consistent with Anders's reported need to raise his legs. We see it differently. No doctor, not even PA Million, instructed Anders to elevate his legs—at least as reflected in the evidence the ALJ reviewed. Anders's own testimony that elevating his legs eased his swelling, along with statements to his medical providers to that effect, did not compel the ALJ to afford greater weight to PA Million's opinion. See *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (explaining a claimant's "subjective complaints are the opposite of objective medical evidence and, while relevant, do not compel the ALJ to accept [a treating medical provider's] assessment"); see also *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (concluding that an ALJ adequately considered a chiropractor's opinion by summarizing the findings and noting they were not corroborated by any objective evidence in the

record). We are confident that the ALJ's assignment of "little weight" to PA Million's opinion is supported by substantial evidence.

The ALJ's stated reasons for affording "great weight" to the opinions of Dr. Pardo and Dr. Madala also find support in the record evidence. As an initial matter, it was appropriate for the ALJ to look favorably on Dr. Pardo's and Dr. Madala's opinions on the basis that they are "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). The ALJ then reasonably found that the agency doctors' opinions were generally consistent with the record, which showed persistent but usually mild edema. And although the doctors' opinions did not address Anders's reports that leg elevation helps alleviate his edema, Anders did not specify how often, how long, or how high he elevated his legs to reduce the swelling. On this record, the ALJ's assignment of great weight to the agency doctors' opinions is supported by substantial evidence.

C

Finally, Anders contends that the ALJ improperly discounted his testimony about the need to elevate his legs for two to three hours daily. We defer to the ALJ's credibility conclusions unless they are "patently wrong," meaning they lack any explanation or support. See *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)). In determining the credibility of allegations regarding the intensity and persistence of symptoms, an ALJ considers several factors, including objective medical evidence and any inconsistencies between the allegations and the record. See 20 C.F.R. § 404.1529(c). A claimant's assertions of pain, taken alone, are not conclusive of disability. See 42 U.S.C. § 423(d)(5)(A).

The ALJ permissibly discounted Anders's testimony as inconsistent with the objective evidence. The ALJ accepted the truth of Anders's testimony about elevating his legs but explained that such a severe limitation was not borne out by the medical evidence. As the ALJ emphasized, there is no record evidence from Anders's treatment providers recommending that he elevate his legs at all, let alone at the frequency and duration that Anders reported. See *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (explaining that the ALJ "permissibly discounted [claimant's] testimony of incapacitating pain because it conflicted with the objective medical evidence and most of the record"). So we cannot say the ALJ was patently wrong in deciding not to fully credit Anders's testimony about his leg elevation limitation.

To be sure, parts of the ALJ's analysis are not immune from criticism. Some of the reasons the ALJ gave for not lending more weight to Anders's testimony rest on questionable foundation. The ALJ explained, for example, that Anders's edema was generally mild, he had sensation in his feet, he was able to lift his 35-pound daughter, and he had normal muscle strength in his legs. Those observations may be true, but they do not show that Anders had no need to elevate his legs. In the end, though, we are unable to conclude that the ALJ's overall determination lacks substantial support in the record. See *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011) (concluding "that the ALJ's credibility determination was adequately supported by evidence in the record" even though the "credibility determination was not without fault").

### III

On balance, and mindful of the deference owed to an ALJ's decision under the substantial evidence standard, we will not substitute our judgment for that of the ALJ's by reweighing the evidence. See *Zoch*, 981 F.3d at 602. The analysis surely could have been better, but this is not a circumstance where an ALJ altogether missed a medical opinion, ignored important testimony, or reasoned in terms lacking coherence. Anders bears the burden of proving his disability, and nothing prevented him from offering objective medical evidence to corroborate his testimony about the need to elevate his legs. See 20 C.F.R. § 404.1512(a); *Summers*, 864 F.3d at 527.

We see no error in the ALJ's determination that Anders failed to meet this burden and therefore AFFIRM.