NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2022
Decided May 26, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-1920

| | |
|---|---|
| GORDON LYNN MARTIN,<br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:20-CV-398-RJD |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security<br> *Defendant-Appellee*. | Reona J. Daly,<br>*Magistrate Judge*. |

**O R D E R**

Gordon Martin challenges the Social Security Administration's denial of his application for disability insurance benefits. He argues that the administrative law judge who determined that he could perform limited sedentary work despite his pulmonary impairment ignored contrary evidence. As the district court concluded, substantial evidence supports the ALJ's decision, and so we affirm.

**I**

Martin, now 53, applied for disability insurance benefits in December 2015, claiming that he had been disabled since 1992. He asserted that a combination of disorders, including chronic obstructive pulmonary disease, bilateral hip replacements, manic depressive disorder, and schizoaffective disorder, left him unable to work. Martin is entitled to seek benefits only through his date last insured, which was December 31, 1997. 42 U.S.C. § 423(c); 20 C.F.R. § 404.140; see *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

An ALJ first denied Martin's application in November 2016, but the district court remanded. *Martin v. Berryhill*, No. 17-CV-278-JPG-CJP, 2017 WL 4777150, at *7 (S.D. Ill. Oct. 23, 2017). After the ALJ issued a second unfavorable decision, the district court again remanded with instructions to consider the medical evidence of trends in Martin's lung impairment over time. *Gordon L.M. v. Comm'r.*, No. 18-cv-02055-DGW (S.D. Ill. July 30, 2019). The proceedings on remand led to the present appeal.

Martin's lung condition is the only medical issue pertinent to this appeal. He first developed lung problems in 1992, when an infection caused by a tooth extraction spread throughout his body. Martin was hospitalized for these complications from November 1992 to March 1993; he spent weeks on a ventilator and months unable to walk or eat. A week before his discharge from the hospital, Martin completed a pulmonary function test, which showed a forced vital capacity of 0.92 and a forced expiratory volume of 0.90—abnormally low values reflecting extremely reduced lung function.

In early 1994, Martin attended a follow-up visit to check his lungs. Dr. Daniel Belcher (who treated Martin while he was hospitalized) concluded that Martin's condition had stabilized but that he had chronic inflammation and scarring of the lungs, as well as thickening of the lung lining. According to Dr. Belcher, these conditions were likely to inhibit Martin's breathing permanently, especially during physical exertion. Nevertheless, Dr. Belcher noted that Martin was "active," "able to complete activities of daily living," and "adjusting" to his lung impairments.

Twelve years later, in 2006, Dr. Michael Ryan assessed Martin's overall health. Dr. Ryan (who was aware of Martin's lung issues) noted that as of the 2006 exam, Martin reported that "he [had] recuperated fully" and was not known to have "respiratory diseases" or "chronic lung disease." This assessment was given approximately nine years after Martin's date last insured.

Martin had no more pulmonary function tests until August 2010, when a test showed a forced vital capacity of 1.88 and a forced expiratory volume of 1.54. On his next

test in December 2014, Martin demonstrated a forced vital capacity of 1.54 and a forced expiratory volume of 1.22. Both sets of results show abnormally low lung function, though not as severely reduced as in 1993.

Multiple doctors evaluated Martin in connection with his disability claim. In 2016, four consulting state-agency doctors evaluated Martin's medical records and found insufficient evidence of impairment before the critical date last insured to support a finding that Martin was disabled. In 2018, Dr. Steven Golub, an impartial medical expert under contract with the Social Security Administration, evaluated Martin's medical records and completed interrogatories about his restrictions. Dr. Golub opined that Martin's lung impairment medically equaled Listing 3.02 (for chronic respiratory disorders), and highlighted Martin's use of supplemental oxygen to justify this finding. And in 2020, Dr. Narinder Arora (who examined Martin at the request of his then-attorney) described Martin's restricted movement and use of continuous oxygen between 1992 and 1995.

Martin testified at three hearings before an ALJ. At all three, he testified that, between 1993 and 1997, he had difficulty walking and needed frequent breaks. He also testified in two hearings that extreme weather (heat, cold, or humidity) made breathing even more difficult for him, and that he would not have been able to commute to work on a day with extreme weather. At the most recent hearing in January 2020, he described family outings he had taken, such as accompanying his children to the Six Flags amusement park in May 2009 and to the swimming pool. In addition, Martin testified that, contrary to Dr. Arora's report, he started using portable oxygen only in 2014.

At the last hearing, the ALJ called a medical expert, Dr. Keith Holan, who testified that the impairment shown by Martin's 1993 pulmonary function test would meet Listing 3.02 if it had been taken when Martin was medically stable, but Martin was not stable when the test was conducted. When asked how Martin's pulmonary function would have changed between the 1993 test and the 2010 test (the results of which were also low enough to meet Listing 3.02 but were obtained long after the closed period of coverage), Dr. Holan explained that he would expect "steady improvement" in pulmonary function. The ALJ also asked Dr. Holan whether Martin's condition would have medically equaled Listing 3.02 at the time of the 1993 test. Dr. Holan said that the 1993 test results were "slightly falsely low" because Martin was hospitalized for a severe illness at the time. As for job-related restrictions, Dr. Holan explained that Martin could sit for eight hours a day with restrictions on movements such as lifting, standing, and walking, but he could not tolerate exposure to extreme temperatures or humidity.

The ALJ also called a vocational expert, who testified that sedentary jobs that can accommodate Martin's physical limitations, including his reported intolerance to temperature extremes and humidity, do exist. On cross-examination, the vocational expert testified that two absences per month (on average) would preclude even these jobs.

After the hearing, the ALJ issued the decision under review. Applying the standard five-step analysis, see 20 C.F.R. § 416.920(a)(4), the ALJ found, as relevant here, that Martin's lung conditions, which were severe, did not meet or equal a listed impairment. The ALJ explained that the pulmonary function test from 1993 did not produce valid data for applying the listings, because Martin was hospitalized for an infection. He also concluded that the 1993 results did not show that Martin's lung impairment medically equaled Listing 3.02 because—according to Dr. Holan—they were likely "falsely low." The ALJ acknowledged that the 2010 results met Listing 3.02 and Martin was medically stable when he was tested, but he did not rely on that result because it came more than a decade after the relevant period. The ALJ discounted Dr. Golub's opinion that Martin's lung impairment equaled the listing, because Dr. Golub relied on Martin's use of supplemental oxygen, which began only in 2014. Similarly, the ALJ discounted Dr. Arora's report because of the error relating to Martin's use of portable oxygen.

Next, the ALJ concluded that, although Martin could not return to his previous work, he could perform sedentary work with some restrictions on physical movement and the work environment. Because Martin participated in activities such as visiting amusement parks and swimming pools to watch his children, the ALJ doubted that his intolerance of extreme temperatures and humidity was as severe as he described. And even if his exposure to these extremes were restricted, suitable sedentary jobs remained available in the national economy.

The ALJ denied Martin's application based on this step-five finding. On review, the district court (in this case, a magistrate judge sitting by the consent of the parties, see 28 U.S.C. § 636(c)) concluded that the ALJ's rulings were supported by the evidence, and so it upheld the denial of benefits.

## II

On appeal, we review the ALJ's decision directly. The agency's findings are "conclusive" if supported by "substantial evidence," see 42 U.S.C. § 405(g), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

Martin first argues that the ALJ should have found that his condition was medically equivalent to Listing 3.02 during the relevant period. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02. (Martin appears to concede that he did not show he *met* Listing 3.02.) To the extent that Martin also contends in his reply brief that the ALJ not only drew the wrong conclusion from the evidence, but also did not explain himself with the required level of detail, Martin waived this argument by failing to raise it in his opening brief. See *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). We do not address it any further.

To show that his condition was the medical equivalent of Listing 3.02 during the relevant period, Martin had to demonstrate that his condition was "at least equal in severity and duration to the criteria" of Listing 3.02. 20 C.F.R. § 416.926. Citing Social Security Ruling 18-01P (a policy interpretation), Martin appears to argue that the ALJ should have considered the trend one can extrapolate from the 1993 and 2010 pulmonary function tests, which in his view compels the conclusion that he equaled Listing 3.02 before his date last insured. Martin acknowledges that the 1993 test was taken when he was in medical distress, but he characterizes the results as the "nadir" of his pulmonary function in the relevant period. He relies on Dr. Holan's opinion that "steady improvement" in Martin's lung function between 1993 and 2010 was expected. Because both the 1993 and 2010 pulmonary function results were poor enough to meet the listing, Martin asserts that his function must have been low enough on the date last insured. Other than this trend, Martin discusses no other evidence to support his contention that his condition medically equaled Listing 3.02.

Perhaps the ALJ would have been entitled to draw the inference Martin urges, but there was ample evidence on the other side, too, and that is all the substantial-evidence rule requires. The ALJ assigned little weight to any potential trend based on the 1993 and 2010 test results because the 2010 test occurred 17 years after the 1993 test (and over a decade after the date last insured), and because Dr. Holan deemed the 1993 test results "falsely low" considering Martin's severe illness at the time. Dr. Golub did opine that Martin medically equaled Listing 3.02 during the coverage period, but the ALJ gave a good reason for rejecting this assessment, noting that it was based on Martin's use of supplemental oxygen, which did not begin until long after the date last insured.

Further, the ALJ relied on evidence that undermines Martin's position that his lung function was continuously disabling after 1993. In assessing Martin's residual functional capacity, the ALJ relied on Dr. Ryan's 2006 report, which recorded that Martin described himself as having "recuperated fully" from the 1992 to 1993 hospitalization and assessed no chronic lung or respiratory issues. The ALJ found Dr. Ryan's report to be

inconsistent with Martin's contention that his lung issues were so severe that he was unable to work a sedentary job in the relevant period. Given the contradictory evidence on the question whether Martin's condition was work-preclusive between 1992 and 1997, the ALJ was permitted to resolve the issue as he saw fit. It is not our role to "reweigh the evidence." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

Martin next argues that the ALJ should have found him disabled because his intolerance of extreme temperatures and humidity would cause a work-preclusive level of absenteeism. But Martin did not support that point to the ALJ's satisfaction. The record establishes that (1) Martin is sensitive to extreme temperatures and humidity, (2) that being absent more than twice per month is unacceptable to an employer, and (3) that, historically, extreme weather sometimes occurred in Martin's geographic location. But Martin never demonstrated that he would average two absent days per month, as opposed to occasional times. He has not directed us to any objective medical evidence, overlooked by the ALJ, that establishes that he could not safely commute on hot, cold, or humid days, leading to work-preclusive absenteeism. 20 C.F.R. § 404.1529(a); see *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). The ALJ therefore did not have substantial evidence to support a conclusion that Martin's restrictions would cause two or more missed work days per month.

Moreover, the ALJ did not find credible Martin's testimony that his lung impairment was so severe that he could not commute to work on hot, cold, or humid days. To determine the credibility of allegations of disabling symptoms, an ALJ may consider factors including objective medical evidence, daily activities, and any inconsistencies between the allegations and the record. 20 C.F.R. § 404.1529(c). Here, the ALJ referred to Dr. Ryan's statement that Martin reported a full recuperation and no chronic lung disease as of 2006, and Martin's own testimony that he visited amusement parks in warm months for family outings to watch his children. Martin does not contest the ALJ's adverse credibility finding on appeal. Because the ALJ discussed "specific reasons supported by the record" for his conclusion, there is no sign that it was "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). And nothing other than Martin's testimony supports his contention that commuting during certain weather conditions was impossible. That, too, is untouchable as long as the adverse credibility determination stands. Crediting the testimony of Dr. Holan, the ALJ considered Martin's need to avoid extreme temperatures and humidity when defining his residual functional capacity. No more was required.

We **AFFIRM** the judgment of the district court.