**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 6, 2013
Decided May 10, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2073

| | |
|---|---|
| LATONYA D. BURNAM, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 10 CV 5543 |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social | Sheila M. Finnegan, |
| Security, | *Magistrate Judge.* |
| *Defendant-Appellee.*[1] | |

**O R D E R**

Latonya Burnam challenges the district court's decision upholding the Social Security Administration's denial of her application for disability benefits. An administrative law judge had concluded that Burnam's herniated disc, chronic headaches, anemia, and allergies are severe but not disabling. Burnam argues that the

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted Carolyn W. Colvin for Michael J. Astrue as the appellee.

ALJ erred in summarizing her medical history and wrongly discredited her testimony that pain inhibits her from working full time. A magistrate judge, presiding by consent, thoroughly analyzed these arguments and determined that the ALJ's disability determination was supported by substantial evidence. We agree and thus affirm the district court's judgment.

Burnam was 36 when she applied for benefits in December 2006. In her application, she alleged that a herniated disc and severe headaches had become disabling during an eight-year span from 2000 to 2008 when she was not working. Before that jobless stretch, from 1995 until 2000, Burnam had worked part-time as a home healthcare aide. After applying for Social Security benefits, in 2008 and 2009 she worked a series of part-time jobs as a hotel housekeeper, telemarketer, and sales associate. This sporadic work history appears to have made Burnam ineligible for Disability Insurance Benefits, so she applied only for Supplemental Security Income, which is available to disabled, low-income citizens regardless of their work history or insured status. *See* 42 U.S.C. § 1382(a). The state agency denied Burnam's claim initially and on reconsideration, and she received a hearing before an ALJ in July 2009. The following discussion of Burnam's medical history comes from the record before the ALJ.

Burnam's lower-back pain started in 2002, after she fell down a flight of stairs. The pain still persisted in July 2006 when an MRI revealed a "very large central disk herniation." The next month Burnam went to South Suburban Hospital complaining of pain radiating from her lower back to her left knee. Further testing showed evidence of a distressed nerve (a "lumbosacral radiculopathy") in her back or leg. She was prescribed physical therapy, and during the initial evaluation in September 2006, the therapist noted that Burnam previously had attended physical therapy "with good relief." The therapist also noted that Burnam said her pain had returned in June 2006. When she visited the pain clinic, she declined an epidural steroid injection, saying that she would give it thought and decide later. In the meantime, she was advised to take nonprescription painkillers.

In October 2006, about eight weeks before she applied for benefits, Burnam visited a neurosurgeon to address the pain in her back and leg. He noted that Burnam could walk normally but suffered from pain that was aggravated "by prolonged sitting and standing and walking." The doctor recommended surgery for her disc herniation, but Burnam did not follow this recommendation.

Burnam returned to South Suburban Hospital in December 2006 after falling down stairs again. According to a doctor's note from that visit, this fall aggravated her existing herniated disc, though she was "fully ambulatory" and had a full range of motion. The attending doctor prescribed pain medication.

In early 2007 two state-agency physicians weighed in on Burnam's back pain. One of these doctors examined Burnam and, noting that she described her back pain as between 7 and 8 on a scale of 10, concluded that "she has mild difficulty and pain walking more than half an hour, standing for more than 10-15 minutes or lifting more than 10 lbs." This doctor also explained that Burnam was diagnosed with heart palpitations in the late 1990s and that a stress test performed at South Suburban Hospital in 2003 "indicated she had suffered a mild heart attack." The second doctor reviewed her medical records and imposed less-stringent limitations; in his view, Burnham could lift up to 20 pounds and stand or walk for about 6 hours in an 8-hour workday. Both doctors noted that she could walk normally without assistance and, at least occasionally, squat or crouch. After Burnam's application was denied initially in March 2007, a third state-agency doctor reconsidered the medical evidence but agreed with the non-examining doctor's assessment.

In October 2007 Burnam again visited the hospital with complaints of back pain and was examined by Dr. Olalekan Sowade, who continued treating her until her hearing nearly two years later. During this time, she was prescribed medications to treat nausea and pain in her head and neck. In April 2008, a doctor at the hospital's pain clinic advised Burnam about managing her pain with something other than short-acting medication and again recommended epidural injections. But once again Burnam refused the recommended treatment in favor of her preferred medication of Tylenol 3.

In October 2008 Burnam went to an emergency room complaining of chest pain and dizziness. She exhibited a normal gait and a full range of motion in her neck and extremities. She was diagnosed with chest pain, anemia, and vertigo, and released around 2:00 a.m. with permission to "return to work/school today." But later that day she checked in to a different hospital's emergency room, where she received the same diagnosis and was treated with antacid and antihistamine. Two months later, Dr. Sowade, Burnam's treating physician, wrote a short note stating that Burnam had been "referred to the neurologist for evaluation of dizziness which has prevented her from working." There is no record of Burnam visiting a neurologist at that time.

The month before Burnam's disability hearing, in June 2009, Dr. Sowade completed a full assessment of her residual functional capacity in light of her anemia, dizziness, headaches, and back pain. He concluded that she could sit for about 4 hours, could stand for only 15 minutes, and could lift up to 10 pounds only occasionally (and rarely any more than that). He also noted that she would need 10-minute breaks every hour if working. He did not discuss to what degree each of Burnam's ailments contributed to her limitations.

At the hearing Burnam testified that, for the past two or three months, she had been working up to 20 hours per week as a sales associate at Sears but frequently was compelled to sit down in the back room for "an hour or so" and rest because of her pain. If her boss was to discover the frequency and length of these breaks, she said, she would be fired. She said that working more hours would be "too painful." As for her daily activities, she testified that her pain prevents her from doing laundry or washing her own hair but not from going to the store with her daughter or vacuuming (though she said vacuuming was painful). Burnam also stated that she was worried that taking pain medications stronger than regular strength Tylenol may cause her to have heart palpitations.

A vocational expert then testified about Burnam's employment prospects. He concluded that, with her history of working only part-time, she had not engaged in substantial gainful activity for 15 years. The ALJ asked the VE if any jobs are available for a person with Burnam's characteristics, assuming that the person can perform only sedentary work and lift up to 10 pounds occasionally and the job allows sitting or standing at will without taking the person "off task more than 10 percent of the work period." The VE identified three jobs: "call out operator," information clerk, and order clerk. But he acknowledged that Burnam is unemployable if her pain requires her to exceed customary limits on break periods, which generally are limited to 10 or 15 minutes every 2 hours.

The ALJ denied Burnam's disability claim, concluding that she could work at the three jobs listed by the VE. Applying the five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ concluded that (1) Burnam had not engaged in substantial gainful activity since her alleged onset in 2006; (2) she suffers from degenerative disc disease, anemia, chronic headaches, and allergies constituting severe impairments; (3) these impairments do not meet or equal listed impairments; (4) Burnam cannot perform her past relevant work as

a telemarketer or sales associate; and (5) there exist sedentary jobs in the economy that she can perform.

In reaching his conclusion, the ALJ explained why he was rejecting Burnam's and Dr. Sowade's assessment of her capabilities. Dr. Sowade's assertion that dizziness was preventing Burnam from working was entitled to "little weight," the ALJ concluded, because the opinion was "conclusory" and "vague." The ALJ also rejected Dr. Sowade's assessment of Burnam's limitations as belied by the record, which showed that Burnam had managed her disc pain with conservative treatment, including physical therapy and Tylenol, and had refused even the relatively noninvasive treatment of epidural injections. Dr. Sowade's assessment, the ALJ noted, also conflicted with other medical findings, including the opinion of the examining state-agency doctor from two years earlier and the emergency-room note releasing Burnam to return to work. Further, the ALJ disbelieved Burnam's testimony that working more than 20 hours would be too painful, noting again her conservative pain treatment and refusal to undergo epidural injections.

In upholding the ALJ's determination, the district court decided that the ALJ was justified in giving little weight to Dr. Sowade's assessments. As the ALJ noted, those assessments were undermined by numerous other clinical findings in the record. Also, Burnam repeatedly refused to undergo anything but conservative treatment. Burnam still argued that the ALJ should have considered other factors regarding her treatment relationship with Dr. Sowade, but the court noted that the ALJ found that her argument was hampered by her "own failure to introduce any evidence pertaining to those factors." Citing specific portions of the ALJ's decision, the court also rejected Burnam's argument that the ALJ failed to base his assessment of her residual functional capacity on evidence in the record. Finally, the court concluded that the ALJ's decision to discredit Burnam's own assessment of her capabilities was adequately supported by the ALJ's discussion of Burnam's ability to care for herself at home and her unwillingness to undergo more aggressive treatment.

On appeal Burnam takes a kitchen-sink approach, listing nearly a dozen perceived errors in the ALJ's medical summary without focusing on what she views as the most egregious mistakes. For example, she notes that the ALJ mentioned her "good relief with physical therapy" while omitting the therapist's remark that her pain had recurred. She also criticizes the ALJ for not contacting her treating physician, Dr. Sowade, to clarify ambiguities in his assessment. But these purported mistakes

represent the type of "nitpicking" of the ALJ's decision that we refuse to engage in. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Moreover, the district court addressed these arguments in detail, and Burnam presents no persuasive challenge to that court's analysis. Although we review the district court's judgment de novo, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and confine our review to the rationales offered by the ALJ, *see SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011), we need not repeat the district court's thorough rejection of Burnam's many arguments.

We will further address one of Burnam's primary arguments—that the ALJ erred in discrediting her complaints of back pain. As she points out, an ALJ must articulate specific reasons for discrediting testimony about pain even if the degree of pain is not corroborated by medical evidence in the record. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). But as the district court noted, the ALJ pointed to specific evidence undermining Burnam's assertions of disabling pain, including her repeated failure to undergo even the conservative treatment option of epidural injections to alleviate her back pain. As the government emphasizes, 20 C.F.R. § 416.930(a) notifies claimants that, "to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." The ALJ also discussed how all of the doctors to examine Burnam except Dr. Sowade assessed her limitations as consistent with an ability to work.

Because we agree with the district court that the ALJ here supported his findings by discussing specific, substantial evidence in the record, the judgment is

AFFIRMED.