In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-1381

DEBRA A. PRILL,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:19-cv-00977-bbc — **Barbara B. Crabb**, *Judge.*

———————————

ARGUED NOVEMBER 3, 2021 — DECIDED JANUARY 13, 2022

———————————

Before KANNE, BRENNAN, and KIRSCH, *Circuit Judges.*

BRENNAN, *Circuit Judge.* For almost 30 years, Debra Prill worked for the Eau Claire, Wisconsin County Highway Department performing physically demanding work, including driving a dump truck and maintaining roads. She also suffered from pain in her lower back and knees, which was exacerbated by a car accident and multiple work injuries.

Prill retired in August 2014 and later filed for Social Security disability benefits alleging she could no longer perform heavy or medium work. Several doctors examined Prill or reviewed her medical records between 2014 and 2016, but they reached different conclusions about her physical limitations.

An administrative law judge held a hearing on Prill's application for benefits. The ALJ found Prill's testimony only partially credible, concluding that her report about the severity of her symptoms and the extent of her limitations was inconsistent with other record evidence. The ALJ also weighed the competing medical evidence and gave greater weight to the opinions of consulting physicians who reviewed Prill's medical records than to the opinion of Prill's treating physician. So, the ALJ concluded that Prill had not been disabled since August 2014.

Prill appealed the denial of her application for benefits, first to the Appeals Council of the Social Security Administration which denied her request for review, and then to the district court. Prill argued that substantial evidence did not support the ALJ's decision. To Prill, the ALJ had wrongly discounted her subjective allegations, and had improperly weighed the differing medical opinions.

The district court affirmed the ALJ's decision, ruling that substantial evidence supported the ALJ's analysis in both respects. We agree, so we affirm the district court's judgment.

## I.

### A. Factual Background

*Events before the alleged August 2014 disability onset date*. Prill worked for Eau Claire County from September 1985 to

August 2014. She began reporting back pain as early as 1998, which increased after a car accident in 2002. Prill suffered a work injury in 2006, after which she reported pain in her leg and lower back lasting two years. Dr. Donald Bodeau treated her and monitored her progress in physical therapy. Prill received epidural injections for back pain in 2008 and 2009 and resumed work without restrictions in June 2009.

In 2010, Prill suffered knee injuries at work, and an MRI scan of her lumber spine showed degeneration. She reported worsening pain in her back and right leg in August 2011, but she continued to work without restrictions. The next month she was diagnosed with right knee osteoarthritis and a probable meniscus tear. In December 2011, Prill suffered another work-related injury and for approximately one month was restricted to light work. She had resumed lifting up to 80 pounds by July 2012. Prill had right-knee surgery in January 2013, and she was diagnosed with a meniscus tear after the surgery. She declined physical therapy and later returned to work.

When Prill's work truck caught fire and she jumped out of it in December 2013, she experienced whiplash and neck pain but few other symptoms at the time. In April 2014, Dr. Mark Attermeier examined Prill and found that she had normal and full range of motion in her joints and that her neurological exam was normal. That month Prill saw a chiropractor and reported she was engaged in light duty work. In May 2014, Dr. Bodeau again saw Prill, who complained of pain in her neck and shoulders. Prill also reported that she planned to perform general manual labor that summer.

*Events between the August 2014 alleged onset date and April 2016.* Prill planned to retire in August 2014 at age 55. That

month she saw a podiatrist and reported pain in her left foot. The podiatrist wrote that Prill was "in no acute distress" and that most findings were normal. The podiatrist recommended a custom orthotic insert and did not recommend surgery. The next day, Prill saw Dr. Bodeau, who reported that Prill walked abnormally from pain.

Later in August 2014, Prill saw orthopedist Dr. Andrew Israel, who reported her left knee "is doing okay." Dr. Israel recommended conservative treatment, although he noted that she might be a candidate for surgery in the future. Prill participated in recommended physical therapy and made progress, but she stopped attending her appointments in October 2014 and was discharged. Four months later Prill saw Dr. Bodeau, who wrote that "[Prill] is retired but no work restrictions are implemented." In April 2015, Prill saw Dr. Bodeau again and reported severe neck pain. Dr. Bodeau wrote that Prill "remains retired but available for unrestricted activity." Dr. Attermeier examined Prill in June 2015 and she told him she was fully retired and enjoying it. At that visit Prill reported back pain had "not been much of a problem recently."

In the summer of 2015, in connection with a worker's compensation claim, Prill underwent independent medical evaluations ("IMEs") with two consulting doctors. To orthopedist Dr. Kevin Kulwicki, Prill complained of pain in her knees. Various tests indicated a torn meniscus in her right knee but not her left knee. Dr. Kulwicki recommended against further arthroscopic surgery, and that for her right knee Prill engage in no repetitive bending, squatting, stooping, or kneeling. He assessed no further restrictions. Dr. William Monacci, a neurosurgeon, also examined Prill and wrote that

she had diminished sensation in her upper arms. He noted as well that she had a normal heel and tandem gait. Dr. Monacci wrote that Prill was not permanently disabled and that no permanent restrictions were necessary.

Dr. Bodeau disagreed with the results of the two IMEs, and in December 2015 he wrote Prill's attorney. Dr. Bodeau opined that Prill's disability rating should have been 12 percent because of her back pain. The letter stated that Prill "did just barely make it to retirement," and Dr. Bodeau suggested that but for Prill's back pain she would have continued to work beyond 2014. At this time, Prill was in physical therapy. After she canceled or failed to show up to several appointments—and then failed to schedule additional appointments—her physical therapy was again discontinued in January 2016. Prill applied for Social Security disability benefits in December 2015.

*Events in Spring 2016 and after.* Dr. Alena Marozava examined Prill and noted in April 2016 that she showed mild to moderate convex curvature in the lumbar spine, although no fracture. X-rays confirmed mild to moderate scoliosis with mild to moderate multilevel degenerative disc disease of the lumbar spine. Dr. Marozava assessed Prill with moderate deficits in sitting and standing due to neck pain and moderate deficits in lifting, as Prill reported being able to lift grocery bags or "2 cases of pop." Additionally, Dr. Marozava wrote that Prill reported difficulty with stairs and that she did not feel safe driving long distances because of her back and neck pain. Prill told Dr. Marozava she did household chores, such as vacuuming, mopping, cooking, and cleaning, and Dr. Marozava assessed no deficits in Prill's bending, twisting, or stooping.

A state-agency consultant, Dr. George Walcott, reviewed Prill's medical records in April 2016 to conduct an initial disability determination. Dr. Walcott opined that Prill could lift 50 pounds occasionally and 20 pounds frequently. He determined that she could stand, walk, and sit for about six hours per day, but he assessed no further restrictions. Dr. Pat Chan, another state-agency consultant, reviewed Prill's medical records in September 2016 to conduct a disability determination at the reconsideration level, and he reached the same conclusions as Dr. Walcott. Dr. Chan determined that Prill's statements regarding her symptoms were only partially consistent with the objective medical evidence, which did not show musculoskeletal issues sufficiently severe to create the personal-care issues that Prill described. Per Dr. Chan, who cited Prill's normal gait and her participation in aquatic therapy, Prill could perform medium work.

In July 2017 and January 2018, Prill saw Dr. Kristina Schuldt. During the latter visit, Prill reported that she took hydrocodone for pain. According to Prill, she had an increase in chores at home as she had become the caretaker for three minor children. During this visit, Prill rated her pain at 5 on a scale of 10.

### B. Procedural History

An ALJ held a hearing on Prill's application for Social Security benefits in March 2019. Prill testified she had injuries before August 2014, but she wanted to wait until then to retire to take advantage of her full pension. Throughout her employment with Eau Claire County, she had to lift at least 50 pounds. Prill agreed with Dr. Bodeau's letter regarding her restrictions, except that she did not believe she could lift up to 25 pounds for one-third of the day or twist and climb for up

to one-third of the day. She said she could not sit for even an hour.

Despite these restrictions, Prill also contended she was able to perform her job through August 2014 because her foreman accommodated her, her coworkers lifted many of the heavy items that she would ordinarily have been responsible for lifting, and sometimes she was permitted to lay down during her shift. Prill also said she cooked, baked, did laundry, and cleaned her home. She testified she drove to go shopping and to church. The ALJ asked about epidural injections Prill received in her lower back, and she responded the injections gave her relief and allowed her to complete physical therapy.

The ALJ issued a decision finding that Prill had not been disabled since August 2014. Although the ALJ found that Prill had multiple severe impairments, none of them met or equaled the severity of one of the impairments that results in per se disability under 20 C.F.R. § 404.1520 and other applicable regulations.

The ALJ then determined Prill's residual functional capacity ("RFC"). She concluded that Prill could perform medium work with the following restrictions:

> occasional climbing of ramps and stairs but never climbing of ladders, ropes[,] or scaffolds; occasional stoop, kneel, and crouch but never crawl; frequently push/pull bilaterally; frequent lateral rotation of the head/neck; frequent handling and fingering bilaterally; avoid moving mechanical parts and unprotected

> heights; cannot perform production rate or pace
> work such as assembly line work.

The ALJ reasoned that Prill's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Further, the ALJ noted that the alleged onset date of August 2014 corresponded precisely with Prill's retirement, and the ALJ cited the positive results of Prill's June 2015 visit with Dr. Attermeier as undermining Prill's statements about the intensity and limiting effects of her symptoms. The ALJ found that the results of the examinations conducted by the podiatrist and Drs. Kulwicki, Monacci, and Israel were consistent with her RFC assessment.

The ALJ assigned little weight to the opinion of Dr. Marozava. As the ALJ noted, Dr. Marozava observed Prill as healthy, alert, and having "normal tandem walk, toe heel walk and intact rapid alternating movements." But the doctor assessed moderate deficits in sitting and standing, due to back and neck pain, and moderate deficits in lifting. The ALJ found that these "limitations are based upon [Prill's] subjective complaints and are very vague so given very little weight as not supported by the exam that day, her extensive activities and abilities. The overall evidence indicates mostly conservative treatment for her pain with good results with medications and therapy."

The ALJ also did not find persuasive the opinions of Dr. Bodeau. To the ALJ, he failed to "provide any objective exams or diagnostic testing" on the form he submitted to support the permanent restrictions in lifting, kneeling, squatting, and crouching that he posited. Further, the ALJ noted that Dr. Bodeau's proposed restrictions were inconsistent with his

own treatment notes, which stated that Prill was retired but not subject to any work restrictions. The ALJ also found Dr. Bodeau's opinion to be inconsistent with the opinions of Drs. Monacci and Chan, to which the ALJ gave great weight as consistent with the objective medical evidence.

Having reached the RFC assessment, the ALJ determined that Prill could not return to her past work as a highway maintenance worker, which required frequent kneeling. But the ALJ found that Prill's RFC enabled her to work jobs which existed in the national economy in significant numbers, like laundry worker, merchandise delivery, or general laborer. The ALJ thus concluded that Prill was not disabled. The Appeals Council denied Prill's request for review, so the ALJ's decision stood as the agency's final administrative decision.

Prill sought judicial review and the district court considered the parties' arguments. The court reasoned that the ALJ adequately explained why she discounted Prill's account of her subjective allegations and their effects as inconsistent with the medical evidence and the other evidence in the record, including Prill's conservative treatment, the success of that treatment in mitigating her symptoms, and Prill's own reports of her daily activities. The court also concluded that the ALJ reasonably weighed the opinions of the competing physicians and adequately explained why she assigned little weight to the opinions of Drs. Marozava and Bodeau, which the objective evidence in the record did not support. The district court therefore affirmed the ALJ's decision as supported by substantial evidence.

**II.**

Prill contends the ALJ erred in evaluating her subjective allegations and the medical opinions about her condition.

We review the district court's judgment de novo. *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019). "We will affirm a decision on disability benefits if the ALJ supported her conclusion with substantial evidence." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (citing 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). Substantial evidence is not a high threshold, as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Biestek*, 139 S. Ct. at 1154). Additionally, a claimant bears the burden of proving she is disabled. *Id*. at 513 (citing 20 C.F.R. § 404.1512(a); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017)). We are not to "reweigh the evidence or substitute [our] judgment for that of the ALJ." *L.D.R.*, 920 F.3d at 1152 (internal quotations omitted). Nor are we to "resolve conflicts or decide questions of credibility." *Id.*

To determine whether a claimant is eligible for disability benefits, an ALJ applies a five-step sequential evaluation process to determine whether a claimant can engage in substantial gainful activity. The ALJ considers whether:

> (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves

> him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted); *see also* 20 C.F.R. § 404.1520. "The claimant bears the burden of proof at each step except 5, when the burden shifts to the Commissioner." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021).

### A. Prill's Subjective Allegations

Prill disagrees with the ALJ's findings on her various subjective allegations, from when her alleged disability started, to whether she performed heavy work before retirement, and how to consider her daily activities, medical records, and examination results.

*Prill's alleged onset of disability the same month as her planned retirement.* The ALJ found Prill's statements about the persistence and severity of her symptoms mostly unsupported. Prill says she is credible, as shown by her strong work history, to which Prill contends the ALJ gave insufficient attention. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

Prill is correct that her work history bolsters her credibility. "But work history is just one factor among many, and it is not dispositive," nor does it operate to negate other evidence that supports an ALJ's adverse credibility finding. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016); *see also Summers*, 864 F.3d at 528–29. Prill's work history does not dictate the conclusion she suggests: that the ALJ could not consider the timing of her alleged onset of disability or find her only partially credible.

The timing of Prill's application for benefits is suspicious. She applied nearly immediately after her planned retirement date at age 55, despite working at a job requiring heavy exertion for the previous several years. The ALJ was entitled to consider that the timing of Prill's alleged onset of disability coincided precisely with her planned retirement, suggesting that Prill did not become disabled then.

*Whether Prill performed heavy work before her retirement.* Prill submits the ALJ gave too much weight to her years of pain complaints prior to 2014, contending that just because she worked until age 55 does not mean she was not disabled during some of that time. The Commissioner responds the ALJ was entitled to account for Prill's work despite her complaints of pain, as she was doing heavy work through her retirement, which was inconsistent with the disabling limitations that she described at the hearing before the ALJ. Prill replies she was not in fact performing heavy work but instead receiving accommodations that allowed her to perform the functional equivalent of light work. At the hearing, Prill testified that her coworkers performed many heavy-duty tasks for her—between December 2013 and August 2014—so that she did not have to do them.

Prill has not established that she was not doing heavy work in the months before she retired. An April 4, 2014 note from a chiropractor states that Prill was "sweeping/mopping etc[.] for light duty type work." The medical records do not specify how long the light-duty work persisted. On May 9, 2014, Prill told Dr. Bodeau that she would be doing manual labor during the summer of 2014, but she reported that was because she had missed training sessions rather than because

of any work restrictions. That leaves Prill's testimony at the hearing.

But, as mentioned above, substantial evidence supports the ALJ's determination that Prill was not entirely credible regarding the intensity, persistence, and limiting effects of her symptoms. The ALJ was entitled to discount Prill's assertions about the extent of the help she received from coworkers during the last few months of her employment with Eau Claire County. Because that credibility determination was not patently wrong, we cannot disturb it. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

*Daily activities.* When evaluating the intensity and persistence of a claimant's symptoms, an ALJ should consider the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). Prill next contends the ALJ improperly analyzed her daily activities in and around her home without considering the difficulties they imposed on her.

As Prill asserts, there are limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms. Indeed, this court has "cautioned ALJs not to equate such activities with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Id*. (quoting *Loveless*, 810 F.3d at 508) (internal quotation marks omitted). So, the ALJ appropriately considered that—despite Prill's claimed limitations related to standing, sitting, kneeling, squatting, and crouching—she cooked, baked, vacuumed, did

laundry, loaded the dishwasher, drove, played cards, gardened, and cared for minor children.

Several of Prill's activities are not consistent with her claim that she could not sit, stand, or walk for an extended period and could only rarely kneel, squat, or crouch. In particular, gardening undercuts her claimed limitations because it is a voluntary activity that involves many of the tasks she argues she cannot perform, at least on a sustained basis. As the Commissioner notes, Prill did not have to garden, but rather chose to do so. Gardening involves kneeling, stooping, squatting, and crouching, which Prill stated she was only able to do on a rare basis—five to ten percent of the time—because it caused her pain. Prill reported being unable to garden continuously without pain, but she nevertheless engaged in a voluntary activity that would have aggravated the conditions she alleges were disabling.[1]

The ALJ did not err in considering and weighing Prill's self-reported daily activities, including gardening. Those daily activities were appropriately determined to be inconsistent with the severity and limitations of her claimed symptoms.

*Medical records.* Prill also argues the ALJ improperly cherry-picked evidence that her symptoms were improving while ignoring evidence that some of them were persistent or

---

[1] This court has approved of ALJs considering whether a claimant gardens in reference to whether the claimant's symptoms were as limiting as the claimant alleged, albeit in unpublished orders. *See Densow v. Saul*, 858 F. App'x 928, 931–32 (7th Cir. 2021); *Molnar v. Astrue*, 395 F. App'x 282, 285, 288 (7th Cir. 2010).

worsening in their intensity. Specifically, Prill believes the ALJ erroneously relied on Dr. Bodeau's August 2014 treatment note indicating that Prill was "already feeling mildly better as regards her back" while ignoring that the same treatment note says Prill "still ha[d] significant low back and radicular left leg pain."

We do not agree with Prill that the ALJ took the August 2014 treatment note out of context. *See Denton v. Astrue*, 596 F.3d 419, 425–26 (7th Cir. 2010) (concluding that substantial evidence supported the ALJ's analysis where the ALJ "specifically addressed all the evidence that [the claimant] point[ed] out" but declined to "assign the significance to it that [the claimant] prefer[red]"). For instance, the treatment notes from Prill's visit with Dr. Israel—which also took place in August 2014—support the ALJ's conclusion about the intensity and persistence of Prill's symptoms. Dr. Israel reported Prill was "doing okay" with respect to her left knee. He also wrote that conservative treatment was recommended for Prill, including aquatic therapy, physical therapy, and activity modifications, and Dr. Israel noted that Prill was happy with the proposed treatment plan. And, in both February 2015 and April 2015, Dr. Bodeau wrote that Prill was available for unrestricted activity. These medical records bolster the finding that the record did not support Prill's allegations about the intensity, persistence, and limiting effects of her symptoms, and they dictate that the ALJ did not improperly cherry-pick evidence.

Prill also disputes the ALJ's consideration of other medical records. An ALJ is entitled to consider the course of a claimant's treatment. 20 C.F.R. § 404.1529(c)(3)(v). Prill's treatment—injections, orthotics, and physical therapy—was

conservative. *See Singh v. Apfel*, 222 F.3d 448, 450 (8th Cir. 2000). Prill claims the ALJ placed too much weight on the conservative course of treatment. She cites *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013), where this court suggested that the ALJ was incorrect in determining that a claimant was treated conservatively. But *Schomas* does not entirely support Prill's position, as the claimant there "underwent major surgery." *Id*. Here, Prill did not undergo major surgery during the period of time under consideration, and the most aggressive treatment she received consisted of the injections that have been described as conservative treatment.[2] So, the ALJ did not err in considering that Prill received conservative treatment.

Relatedly, Prill contends an improvement in her condition is not sufficient to demonstrate a lack of disabling symptoms. While the evidence is not conclusive on this point, substantial evidence supports the ALJ's finding that pain medications enabled Prill to manage her pain well enough to perform medium work, subject to the restrictions the ALJ set out in the RFC assessment. In May 2014, Dr. Bodeau noted that it was important for Prill to have access to her midday doses of Gabapentin, Ibuprofen, and Tramadol to manage her pain

---

[2] This court has characterized epidural injections as conservative treatment, although in unpublished orders. *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (citing *Singh*, 222 F.3d at 450); *Burnam v. Colvin*, 525 F. App'x 461, 464–65 (7th Cir. 2013).

while at work. And in April 2015, Dr. Bodeau recommended that Prill continue with those same three medications while simultaneously noting that Prill "remain[ed] retired but available for unrestricted activity." These treatment notes support the ALJ's finding that the pain medications facilitated improvements in Prill's symptoms that enabled her to function at work, and they preclude us from holding that the ALJ's analysis of the effect of Prill's pain medications was unsupported by substantial evidence.

*Examination results.* Next, Prill argues the ALJ misinterpreted the results of the various medical examinations, many of which showed major objective deficits that limited her functioning. Prill points to the IME performed by Dr. Monacci, which described range-of-motion loss and diminished sensation, and a September 2015 treatment note describing diminished grip strength.

The ALJ analyzed the findings from Dr. Monacci's IME but emphasized other aspects of his report, such as the finding of "normal tone without atrophy in all muscle groups of the upper and lower extremities" and that Prill "had normal heel and toe and tandem gait." While the ALJ noted the exam showed some abnormalities—such as cervical spine narrowing, degeneration in the cervical spine and lumbar region, and a mildly limited range of motion in the neck—she nevertheless concluded that the medical evidence did not support Prill's alleged loss of functioning.

Substantial evidence supports the ALJ's decision to assign differing weights to the various medical records. Despite the reports of range-of-motion loss and diminished sensation, Dr. Schuldt wrote in July 2017 that Prill had "full range of motion of all joints" and "[n]ormal movement and sensation of all

extremities." Likewise, Dr. Marozava stated that in March 2016, Prill had normal reflexes at her extremities, full strength, normal knees, and a normal gait. Prill also does not cite any authority that suggests the ALJ erred in emphasizing that Dr. Monacci found Prill had normal tone without atrophy in her extremities and a normal gait.

The ALJ properly considered the timing of Prill's alleged onset of disability, and her performance of heavy work shortly before her retirement. There was no error in the ALJ's finding that Prill's daily activities contradicted her assertions about the persistence and limiting effects of her knee- and back-related symptoms. Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical records. Further, the ALJ appropriately considered and weighed the conservative treatment Prill received and the competing medical interpretations of her examination results.

**B. Medical-Opinion Evidence**

Prill also contends the ALJ erred in weighing medical opinions regarding Prill's limitations.

*Opinions of Drs. Bodeau and Chan.* According to Prill, the ALJ should have given controlling weight—or at least more weight than she gave—to the opinion of Prill's treating physician, Dr. Bodeau. To Prill, this court should consider remanding the case for consideration of an updated medical opinion. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *Moreno v. Berryhill*, 882 F.3d 722, 728–29 (7th Cir. 2018). The Commissioner counters that an ALJ may give less weight to the opinion of even a treating physician if that opinion is inconsistent with other evidence in the record, including

objective medical evidence and the consulting doctor's report. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *Loveless*, 810 F.3d at 507 (citations omitted).

The ALJ adequately explained why she discounted Dr. Bodeau's opinion. His own treatment notes contradict his assessment of Prill's limitations (occasional lifting of only up to 25 pounds and rare kneeling, squatting, and crouching). In February and April 2015, Dr. Bodeau indicated that Prill was available for unrestricted activity. Additionally, as the ALJ noted, Prill performed physical and aquatic therapy, and she had a normal gait. Prill also gardened, which involves several movements that Dr. Bodeau wrote ought to be restricted. As the ALJ found, Dr. Bodeau did not provide objective exams or diagnostic testing to support the limitations he believed were necessary. Thus, Dr. Bodeau's opinion as to Prill's limitations was internally inconsistent—as well as inconsistent with objective medical evidence in the record—so the ALJ was entitled to give his opinion less weight. *See* 20 C.F.R. § 404.1527(c)(4); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Zoch*, 981 F.3d at 602; *Denton*, 596 F.3d at 425; *Loveless*, 810 F.3d at 507.

Similarly, Prill contends the ALJ erred in affording great weight to the opinion of Dr. Chan, a state-agency consultant. To Prill, the ALJ's reliance on Dr. Chan's opinion was erroneous because he assessed limitations only related to the knee, and not to the back, even though the ALJ found Prill's cervical and lumbar disc issues severe. But Prill has not shown that the ALJ's decision to afford significant weight to Dr. Chan's opinion was unsupported. Prill focuses on his failure to assess limitations related to the cervical and lumbar

spine, yet she declines to challenge the ALJ's consideration of Dr. Chan's opinion as to knee restrictions.

Moreover, Dr. Chan had before him the medical evidence regarding Prill's cervical spine and lumbar issues when reviewing and analyzing Prill's medical records. In reaching his conclusions, Dr. Chan relied on the treatment notes showing that Prill's spine had a normal alignment and that she ambulated with a steady gait. That was a reasonable interpretation of the treatment notes from Prill's medical examinations. Dr. Chan, an expert in Social Security disability evaluation, was entitled to reach the conclusion that Prill's cervical spine and lumbar issues did not merit the assessment of additional functional limitations beyond those that he assessed. And the ALJ was permitted to afford great weight to Dr. Chan's opinion as a consulting physician, particularly because the ALJ determined that his opinion was consistent with the objective medical evidence. *See Zoch*, 981 F.3d at 602; *Ketelboeter*, 550 F.3d at 625.

*Dr. Marozava's proposed limitations.* Prill also argues the ALJ gave too little weight to Dr. Marozava's opinion. Among other things, Dr. Marozava incorporated into Prill's proposed functional restrictions that she lift no more than two "cases of pop" as well as Prill's statement that she did not feel safe driving long distances because of pain in her lower back and neck. Dr. Marozava wrote that Prill had moderate deficits in sitting and standing, opining that she could sit or stand only for approximately 20 minutes before having to change position. Defending the ALJ's decision to discount Dr. Marozava's opinions, the Commissioner submits that she based her opinions on Prill's subjective allegations, which were not consistent with the objective evidence in the record.

The Commissioner is correct that when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion. *See Ketelboeter*, 550 F.3d at 625; *Zoch*, 981 F.3d at 602. Here, Dr. Marozava's lifting and driving restrictions rested solely on Prill's own subjective statements. The ALJ thus did not err in rejecting these proposed limitations.

Prill contends the ALJ should have given Dr. Marozava's opinion on her standing and sitting limitations great weight because it is based on medical imaging, her past medical history, and a physical examination. But Prill equates Dr. Marozava's opinion with that of Dr. Bodeau. As concluded above, Dr. Bodeau's opinion is inconsistent with his own treatment notes and with several medical professionals' objective observations of Prill, including that Prill exhibited a normal gait, normal heel-to-toe and tandem walking, and a lack of unsteadiness. Just as the ALJ did not commit reversible error in rejecting the permanent restrictions that Dr. Bodeau proposed as unsupported by the record, neither did the ALJ contravene the substantial evidence in rejecting the sitting and standing limitations that Dr. Marozava posited.

*IMEs by Drs. Kulwicki and Monacci.* According to Prill, the ALJ failed to sufficiently account for the IMEs by Dr. Kulwicki and Dr. Monacci. Prill points to the IME after which Dr. Kulwicki reported medial joint line tenderness in her right knee and positive tests for a tear in the meniscus. Prill also notes that after her IME with Dr. Monacci, he wrote that Prill had "diffuse, mild paraspinal tenderness" in the cervical spine and diminished sensory examination. Dr. Monacci also reviewed additional records and reported that his findings were unchanged.

The Commissioner responds that the ALJ gave great weight to the opinions of these two physicians. Following the recommendation laid out in Dr. Kulwicki's assessment, the ALJ precluded Prill from repetitive bending, squatting, stooping, or kneeling with her right knee. Per the Commissioner, Dr. Monacci's opinion also supported the ALJ's RFC determination because Dr. Monacci concluded Prill had no permanent cervical or lumbar restrictions.

We conclude that the ALJ appropriately accounted for the findings Drs. Kulwicki and Monacci made after examining Prill. The ALJ found that Prill was restricted to occasional stooping, kneeling, and crouching but not crawling. She thus accounted for Dr. Kulwicki's findings of right-knee tenderness. And Dr. Monacci's opinion—in which he concluded nothing warranted permanent restrictions as to Prill's back—supports the ALJ's decision not to include any such restrictions in the RFC determination. The ALJ's RFC assessment was closely tied to her view of the evidence. She laid out her reasoning for the weight she gave to the opinions offered by different medical professionals.

*Medication improved Prill's symptoms.* Finally, Prill argues the ALJ improperly analyzed her use of the pain medication hydrocodone, which she took simply to function and which did not enable her to perform medium work as outlined in the RFC assessment. Instead, though, the applicable question is whether the pain medications controlled Prill's symptoms. If they did so such that Prill could perform the tasks necessary to work during the relevant time period, the ALJ correctly concluded that she was not disabled. *See Denton*, 596 F.3d at 425; *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006).

The evidence on which the ALJ relied established that Prill's pain medications achieved good results with no side effects, and doctors observed that she achieved normal functioning. For instance, in May 2017 Prill saw Dr. Schuldt, who wrote that "overall her pain seems to be doing fairly well. She is happy with the current regimen she is on." Dr. Schuldt indicated that she would continue Prill on Tramadol and hydrocodone. As of January 2018, Prill continued to take the same pain medications, which Dr. Schuldt reported did not cause her "any problems." Thus, substantial evidence supports the ALJ's finding that pain medications adequately controlled Prill's symptoms so she could perform medium work, subject to the restrictions detailed in the RFC assessment. The ALJ did not err in analyzing the effect of Prill's use of hydrocodone on her ability to work.

Prill has not shown that the ALJ's decision was unsupported by substantial evidence. The ALJ adequately explained why she discounted the opinions of Drs. Bodeau and Marozava. Additionally, the ALJ's RFC assessment was consistent with the opinions of state-agency consultant Dr. Chan and those of Drs. Kulwicki and Monacci, both of whom examined Prill and wrote comprehensive reports. And the ALJ properly analyzed Prill's use of pain medications.

### III.

Substantial evidence supported the ALJ's reasoning and her determination that Prill was not disabled, so we AFFIRM the district court's opinion and order and judgment for the Commissioner.