In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 21-2592

DANIELLE ALBERT,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, ACTING COMMISSIONER of SOCIAL SECURITY,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:20-cv-00315 — **William C. Lee**, *Judge.*

———————————

ARGUED APRIL 7, 2022 — DECIDED MAY 18, 2022

———————————

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Danielle Albert applied for Social Security benefits shortly after graduating from high school in LaGrange, Indiana. She alleged that suffering from epilepsy and Asperger syndrome, among a few other conditions, has left her disabled and unable to work. Following a hearing, an administrative law judge denied the claim, finding that, if afforded certain accommodations, Albert would be able to perform particular jobs. Because the record contains substantial

evidence supporting the ALJ's determination, we affirm. Should Albert try to work but find herself unable, nothing will prevent her from applying anew for benefits.

**I**

Albert suffers from epilepsy, autism spectrum disorder (Asperger syndrome), ADHD, migraines, and insomnia. Born in June 1998, she has only ever lived at home. Her parents support her financially, help manage her medications, and assist with other tasks of daily living. Albert has never had a driver's license, having been told by her neurologist that her seizure disorder counsels against driving. She also has never worked.

Albert graduated from high school in 2017. Although she struggled in math, her academic performance was otherwise average. In her senior year, teachers commented that they "enjoyed having Danielle in class," and that she "frequently raise[d] her hand in class to make a comment on what we [were] discussing or ask a question." They also observed that "[s]he is organized, she cares and takes feedback well." Outside the classroom, she participated in theater and the Indiana Academic Spell Bowl. While still in high school, Albert expressed a desire to attend college and study criminal justice and forensic psychology. She hoped to work part time (at a coffee shop, bookstore, or the local library, for example) while going to school.

College never panned out for Albert, though. She enrolled in an online course, but then stopped attending after suffering a grand mal seizure in September 2017. She applied for supplemental security income later that month.

After holding an evidentiary hearing in October 2019, the ALJ canvassed the record and conducted the standard five-step evaluation process prescribed for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Albert had never worked. At steps two and three, the ALJ determined that, although Albert suffered from severe mental and physical impairments, these impairments, taken alone or together, did not amount to a listed disability within the meaning of the applicable regulations. See 20 C.F.R. §§ 416.920(c), 416.920(d), 416.925, 416.926.

At step four, the ALJ concluded that Albert had the residual functional capacity, or RFC, to perform a full range of work at all exertional levels, subject to a few restrictions, including that she:

- "can understand, carry out and remember simple, routine, and repetitive tasks with no production rate pace like assembly line work with only occasional simple work-related decision making";

- "can maintain attention and concentration for two-hour segments";

- "could respond appropriately to occasional predictable changes in the workplace"; and

- "could have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training and occasional interactions with coworkers and the general public."

In making these findings and reaching these conclusions, the ALJ credited certain opinions supplied by Dr. Stefanie Wade, a state agency consultative psychiatrist who examined

Albert in January 2018. Specifically, the ALJ incorporated into the RFC Dr. Wade's opinions that Albert "was likely to have difficulty with social interactions" and that her "daily activities appeared to be simple, daily routines appeared to be somewhat established, understanding appeared limited at times, and she had poor concentration and a low frustration tolerance."

On one particular point, however, the ALJ chose not to credit Dr. Wade's opinion. The ALJ found that "Dr. Wade's opinion that [Albert] would need some support from others to accomplish appropriate daily tasks is not persuasive and is not established as being necessary to include within the [RFC]." The ALJ instead credited the view of Dr. Donna Unversaw, a state agency physician who reviewed Albert's files, including Dr. Wade's report, and opined that Albert can "understand, carry out and remember simple instructions" and "make judgments commensurate with functions of simple, repetitive tasks."

At step five, the ALJ relied on the testimony of a vocational expert to find that there are a significant number of jobs that someone with Albert's RFC could perform, including as a cleaner, factory assistant, and laundry worker. The ALJ therefore concluded that Albert was not disabled.

The district court affirmed, and Albert then appealed.

## II

Our review of the ALJ's decision is deferential. We will reverse "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020); see also 42 U.S.C. § 405(g). The Supreme Court has emphasized that the

threshold for substantial evidence sufficiency is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Indeed, the ALJ's decision need only identify "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A

Albert's focus on appeal is the ALJ's RFC determination. She contends that the RFC failed to account for each of her many limitations that leave her unable to work. Under the deferential standard controlling our review, we cannot say the ALJ's contrary view lacks support in the evidentiary record.

The ALJ could have reasonably credited Dr. Unversaw's RFC analysis over Dr. Wade's view suggesting that Albert needed support from others in the tasks of daily living. Because Albert filed her claim for supplemental security income after March 20, 2017, the opinions of treating physicians no longer receive controlling weight. See 20 C.F.R. § 416.920c. Instead, the "most important factors" are a medical opinion's "supportability" and "consistency" with the evidence in the record. *Id.* § 416.920c(a). Under these new regulations, a doctor's "relationship with the claimant" only "may help" in assessing an opinion's persuasiveness. *Id.* § 416.920c(c)(3)(i)–(v). And an ALJ "may, but [is] not required to, explain how [she] considered" these factors in explaining her ultimate reliance on a medical opinion. *Id.* § 416.920c(b)(2). In short, the applicable regulations permitted the ALJ to credit Dr. Unversaw's opinion over Dr. Wade's upon a finding that the former was more consistent with and supportable by the record. See *Prill v. Kijakazi*, 23 F.4th 738, 750–51 (7th Cir. 2022).

Substantial evidence supports the ALJ's adoption of Dr. Unversaw's conclusion that while Albert is certainly still "learning to perform routine [household] tasks," she can nevertheless "understand, carry out and remember simple instructions" and "make judgments commensurate with functions of simple, repetitive tasks." In her report, Dr. Unversaw observed that Albert can vacuum, operate the dishwasher, prepare simple meals, and follow recipes. Dr. Wade's report contains many of these same observations.

To be sure, Dr. Unversaw recognized (as did Dr. Wade) that Albert "appears to have times in which she does not understand what she is doing" and that her mother commented that "some of her efforts at cleaning are not successful," that she "is actually still working on simply following directions on a brownie mix," and that she "needs to be prompted on when to wash her laundry." But it was not unreasonable for the ALJ to credit Dr. Unversaw's conclusion that Albert's medical history showed that she was "[n]ot significantly limited" in her ability to remember locations, to recall and follow basic procedures, and to carry out "very short and simple instructions."

Perhaps even more, the ALJ's ultimate RFC determination found support in Albert's educational records. In May 2017, just before Albert graduated, the school's special educational officer prepared an Individualized Education Program or IEP. The IEP indicated that Albert had serious struggles in math, but otherwise passed her classes and was "a joy to have in class," was "actively involved in the classroom discussion," and "complete[d] all her assignments in all her classes and has excellent behavior." And in a self-assessment included in the IEP, Albert said that she "can ask for help without getting

upset, knows how to look for support/help at home and school, can solve problems that come up in her school and home life, [and] can develop goals." She added that she "can begin work on time, can stay on a work schedule or time plan, can manage time and stay on tasks until they are done, and can change goals when needed."

The IEP did go on to say, however, that Albert was "easily distracted and overwhelmed," that she "has difficulty staying focused for long periods of time," and that she "has more success if there is more immediate supervision." But the ALJ's RFC determination accounts for these limitations by limiting Albert to "simple, routine, and repetitive tasks in a relatively static work environment." Right to it, the ALJ's RFC limitations are consistent with the IEP, which reflects that Albert wanted to find a job but continues to need occasional support to succeed both at home and in work she pursues.

Substantial evidence also supports the ALJ discounting Dr. Wade's statement that Albert would need some support from others to accomplish the various tasks of daily living. Evidence of her needing help with personal care, including taking medications on time and with regularity, does not answer whether Albert can sustain full time work. Indeed, when viewed in the context of the entire record, the ALJ was on solid ground in recognizing that Albert could perform many tasks and activities without the help of others. We see this evidence as consistent with the ALJ's conclusion that the RFC limitations would prove sufficient to allow Albert to maintain full time work.

B

Albert is right to criticize certain aspects of the ALJ's opinion.

*First*, Albert asserts that the ALJ mischaracterized and took out of context her parents' testimony to "shed doubt" on their sincerity. For example, Albert's mother, who worked in special education for five years, testified that she sometimes asks her daughter to take photographs or draw to maintain her fine motor skills—a serious concern for people like Albert who suffer from autism.

The ALJ misunderstood this testimony. The ALJ characterized Albert's mother as having testified that Albert's "fine motor skills are a problem" and then went on to rebut this testimony by observing that "there is no documentary evidence of significant motor neurological deficits, grip strength deficits, or significantly decreased manipulative abilities." But of course there was no such evidence. Albert's mother merely said she was worried that motor skill limitations might arise in the future.

In the totality of the ALJ's analysis, we see the error here as harmless. If anything, the ALJ's analysis ruled out a limitation—"significant motor neurological deficits, grip strength deficits, or significantly decreased manipulative abilities"— that Albert is not even advocating. The ALJ's error, in short, did not affect the RFC and therefore does not require reversal.

Albert points to another, similar instance of the ALJ seeming to take her mother's testimony out of context. In August 2018 Albert suffered a seizure that her parents did not witness, but discovered upon returning home. At the hearing, Albert's mother testified that she believed her daughter could

not live on her own. But the ALJ saw that testimony as inconsistent with the fact that the parents were not home during the 2018 seizure, "which seems to indicate the claimant's parents were comfortable leaving the claimant home."

As Albert rightly points out, her parents did not testify that she was never left alone, only that they would be uncomfortable with her living alone full time. The ALJ saw inconsistency where none existed. But again, this error did not impact the ultimate RFC determination. Indeed, the error occurred in the step-three assessment of the severity of Albert's mental and physical impairments, not at step four in determining the RFC. And no aspect of the RFC relied on Albert's ability to live alone.

*Second*, Albert argues that the ALJ overlooked the January 2017 letter written by her primary care physician Dr. Jamin Yoder. In its entirety, the letter read: "To Whom it May Concern: Danielle Albert is disabled due to Autism. If you have any questions or concerns, please don't hesitate to call." Nobody disputes Albert's autism. But the ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations. See 20 C.F.R. § 416.920b(c)(3) (specifying that "[s]tatements that you are or are not disabled," or statements about whether an individual can or cannot work constitute evidence that "is inherently neither valuable nor persuasive").

Given that substantial evidence supports the ALJ's conclusion that Albert is not disabled, even accounting for her autism, Dr. Yoder's letter is not enough to require reversal. See *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (recognizing that although an ALJ is prohibited "from ignoring an

entire line of evidence that supports a finding of disability," she is not required to "discuss every piece of evidence in the record") (internal quotations omitted).

Albert raises a host of other issues in her brief—including challenging the ALJ's determination that her seizures are well controlled by medication and assessment of the severity of her migraines. We have carefully reviewed the record and conclude that the ALJ had substantial evidence to make her findings.

### III

We are sympathetic to the struggles Albert has faced because of her health conditions. But we cannot conclude at this point that the ALJ's finding that Albert is not disabled was unsupported by substantial evidence. The ALJ's determination effectively requires Albert to try to get a job and give work a shot. If working proves beyond Albert's capacity, she can apply again for Social Security benefits. And nothing we have said in our opinion should be read to prohibit a finding of disability in the future. On the record before us, though, we are left to AFFIRM.